JAMES L. HUFF AND PATRICIA D. HUFF, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Huff v. Commissioner
Docket No. 26772-82.
United States Tax Court
T.C. Memo 1988-564; 1988 Tax Ct. Memo LEXIS 593; 56 T.C.M. (CCH) 838; T.C.M. (RIA) 88564; December 13, 1988. *593 P was engaged in a business operation wherein, through a "bucket shop" operation and various other devices, he raised money purportedly for charity. P dealt principally in cash and provided no books and records for examination by IRS agents in connection with a tax audit. Held, R proved fraud for the years 1972 through 1974 by clear and convincing evidence, using the bank deposits method for determining P's income. Held further, P is collaterally estopped from denying fraud for 1975 by reason of a guilty plea under section 7201, I.R.C. 1954. P may not prove extenuating circumstances for entering the guilty plea to avoid collateral effort thereof as to his liability for the addition to tax for fraud under section 6653(b), I.R.C. 1954. James L. Huff, pro se. William P. Hardeman, for the respondent. NIMS
MEMORANDUM FINDINGS *595 OF FACT AND OPINION NIMS, Chief Judge: Respondent determined the following deficiencies and additions to tax: Additions to Tax
Year
Deficiency
Sec. 6653(b) [1]
Sec. 6654
1972
$  5,580.28
$ 2,790.14
$   -- 1973
14,614.36
7,307.18
-- 1974
12,077.10
7,828.05
-- 1975
3,964.66
3,008.83
90.37
Respondent did not determine the additions to tax under sections 6653(b) and 6654 against petitioner Patricia D. Huff. We will hereinafter for convenience refer to James L. Huff as petitioner. The issues for decision are: (1) whether the statute of limitations under section 6501 bars assessment and collection of the deficiencies; (2) whether respondent properly determined petitioner's income and deductions for the taxable years in question by the bank deposits method of analysis; (3) whether petitioner is liable under section 6653(b) for the addition to tax for fraud for the taxable years in question; and (4) whether *596 petitioner is liable for the addition to tax under section 6654 for failing to file and pay estimated tax for 1975. FTINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioners timely filed joint returns as husband and wife for the taxable years 1972 and 1973. Petitioners' 1974 and 1975 returns were ultimately filed in January, 1977. At the time they filed their petition, petitioners resided in Albuquerque, New Mexico. During the taxable years in dispute, 1972 to 1975, inclusive, petitioner resided in Dallas, Texas, with his above-mentioned wife and their three children. In Dallas, petitioner ran a sole proprietorship called "Riders Roundup" through which he organized and operated charitable fund raising drives and advertising promotions throughout Texas such as "football digests," high school rodeo programs, roadside advertising signs and church directories. In street parlance Riders Roundup was known as a "boiler room" operation, which typically leased office space, a bank of telephones and a WATS line, all on a month-to-month basis. Petitioner's boiler *597 room operation retained maximum flexibility by leasing office space and telephone equipment for short periods of time. Petitioner's business practices were virtually identical in fund raising and advertising. Petitioner's routine procedure was first to obtain a sponsor's approval of the use its name, and then to unleash his sales staff to solicit contributions on a commission basis in the sponsor's name. Petitioner generally remitted a trivial percentage of the donations to the relevant sponsors. Some of these "sponsors" were the Sheriff's Posse Association, the March Against Drugs and various churches. Petitioner's sales staff solicited contributions over the telephone from local businesses and wealthy individuals on an "idiot list" compiled by petitioner. The staff consisted of a small number of "independent contractors" who solicited, usually over the telephone although sometimes in person, contributions and advertisements for the various sponsors which Riders Roundup represented. Many of the so-called independent contractors on petitioner's sales staff were transients who did not own cars or possess credit cards or bank accounts. Most of the sales staff preferred being *598 paid their weekly commissions in cash, finding that cashing checks was quite burdensome without convenient transportation, acceptable identification or a bank account. Each sales person was on a strict commission basis, earning 30 percent of each donation he or she brought in. Some of petitioner's solicitors also doubled as "collectors," and they would receive an additional 10 percent of each contribution he or she personally collected. Petitioner retained a large percentage for his solicitation efforts. Petitioner only solicited on behalf of what he considered to be legitimate nonprofit organizations. Petitioner's solicitation efforts ultimately attracted the scrutiny of an array of law enforcement organizations, including a Dallas special crimes unit, postal inspectors and the IRS. Petitioner was audited by the IRS in 1966, 1967 and 1968 and investigated by three Federal grand juries on charges of tax evasion and mail fraud. The IRS commenced its audit involving the taxable years at issue in January, 1977. In filing and preparing his income tax returns for the years in question, 1972 through 1975, petitioner hired local tax preparers. Petitioner submitted summary sheets *599 of his expenditures and income for each year in question to the preparers, who then calculated petitioner's tax liability from the summary sheets. Other than the summary sheets, petitioner never gave the preparers his books, financial statements or records of any type. The preparers did not check either the accuracy or honesty of petitioner's submissions. In January, 1977, IRS agents began inquiring into the authenticity and truthfulness of petitioners' income tax returns. Petitioner cooperated with the IRS agents, Special Agent George De Los Santos and Revenue Agent Leonard Horton during their investigation into his (petitioner's) finances to the extent of submitting monthly bank statements, informing the agents of all 13 of his bank accounts, informing the agents that the Dallas special crimes unit was in possession of some of his records and giving cancelled checks to the agents. The agents obtained bank deposit tickets from petitioner's banks by means of administrative summons. However, petitioner failed to produce corroboration of his income and expenditures. Many of petitioner's records had been seized by the Dallas special crimes unit during its criminal investigation. *600 Petitioner informed Special Agent De Los Santos of the seizure and gave the special agent the name and telephone number of a Dallas special crimes unit agent to contact. The special agent contacted the Dallas special crimes unit and was given access to petitioner's seized records. Petitioner provided the IRS with those records which he claimed had not been seized or lost. The IRS agents learned, through electronic surveillance of petitioner's telephone conversations during the agents' criminal investigation, that petitioner was withholding certain unidentified information concerning the audit. Petitioner filed suit against his landlord in Dallas county court on May 5, 1978, over a year after the IRS audit was commenced and the revenue agent first requested documentation from petitioner. Petitioner alleged that his financial records were thrown out by the landlord's professional cleaning service in April, 1978. The suit was never litigated and petitioner ultimately dropped his suit. Because petitioner failed to produce sufficient documentation in support of his returns, respondent chose to employ the bank deposits method to reconstruct petitioner's income. To approximate *601 petitioner's deductions, the IRS agents calculated petitioner's likely expenditures. The agents employed the bank deposits method of audit analysis to reconstruct petitioner's gross receipts. The agents' investigation disclosed the following bank deposits: 1972
1973
1974
1975
Exchange Bank
$      --   $    --     $   --     $ 61,789.60
& Trust
Fair Park
114,664.99
118,976.72
46,716.51
--    National Bank
First National
9,745.00
11,017.11
--     --    Bank - Amarillo
First National
--   793.75
--     --    Bank-Mercedes
Lakewood Bank
--   2,890.86
65,669.46
1,257.50
& Trust
Lovefield
--   --    --     2,782.50
National Bank
McAllen State
--   7,797.28
22,293.00
7,642.00
Bank
National Bank
--   --    --     3,002.00
of Fort Sam Houston
North Dallas
655.10
1,712.10
1,784.00
1,266.00
Bank & Trust
North Park
--   --    --     3,214.75
National Bank
Village Commerce
--   --    10,756.24
4,841.14
Bank
TOTAL DEPOSITS
$ 125,065.09
$ 143,187.82
$ 147,219.21
$ 85,795.49
*602 Respondent's agents further determined that petitioner underreported gross receipts for the taxable years 1973, 1974 and 1975 in the amounts $ 21,804.00, $ 12,760.07 and $ 14,864.54, respectively, and overreported business expenses in the amounts of $ 25,203.96 in 1972, $ 24,323.93 in 1973, $ 21,274.36 in 1974, and $ 1,833.74 in 1975. Taking account of these adjustments ultimately led respondent to the figures stated in the deficiency notice. The IRS audit was substantially completed and Revenue Agent Horton completed an Income Tax Audit Changes report, which proposed increased determinations identical to the determinations contained in the statutory notice, on September 28, 1978. The IRS investigation, along with those of the other concerned law enforcement agencies, ultimately led a grand jury to indict petitioner in the United States District Court for the Northern District of Texas on October 17, 1979, for tax evasion and mail fraud. Petitioner was ultimately tried, convicted and imprisoned for mail fraud. [2]
*603 On March 28, 1980, petitioner entered a guilty plea to tax evasion for the taxable year 1975 under section 7201, for which he was sentenced to five years' probation. The close of petitioner's criminal litigation came in mid-1981, and after administrative settlement negotiations failed to produce an agreement, respondent issued the statutory notice of deficiency in August, 1982. Petitioner was released from prison in 1984. After protracted procedural jousting, the trial in this case was held in Albuquerque, New Mexico, beginning on September 16, 1987. OPINION The first issue raised is whether petitioner is liable for additions to tax for fraud for the years in question under section 6653(b). Respondent bears the burden of proving the existence of fraud. Section 7454(a); Rule 142(b). If respondent fails to prove fraud, the statute of limitations will prevent respondent from assessing and collecting any of the deficiencies or additions to tax. Section 6501(a). Because petitioner entered a plea of guilty to the charge under section 7201 of willfully attempting to evade or defeat income tax for 1975, but not as to the years 1972 to 1974, inclusive, we will bifurcate our treatment *604 of the fraud issue and first deal with 1975 and respondent's assertion of collateral estoppel as to that year. Collateral Estoppel -- 1975
Respondent asserts that petitioner's guilty plea to a charge of criminal tax evasion under section 7201 for the year 1975 should collaterally estop him from denying the specific intent requirement of civil tax fraud for 1975. Petitioner contends that he did not consider the collateral consequences of pleading guilty and that we should therefore disregard his guilty plea to the charges under section 7201. Petitioner's arguments have not convinced us that application of collateral estoppel is inappropriate in this case. Petitioner testified: And I did a very foolish thing when I allowed a government witness to come down and talk me into giving him two automobiles to try and reduce our overall expense. That was a mistake, and I paid dearly for it. I took that 1975 guilty plea only because I had already received an eight-year sentence for those two automobiles that I gave to Don Hill [a Federal employee]. No one lost a penny in that offense, but I received an eight-year sentence in federal prison for it. I didn't have a thing to *605 lose here by pleading guilty to 1975 tax, other than to eliminate the criminal aspects of it. That was the way it was explained to me by my attorney, and that is the reason I pleaded guilty to 1975. The record does not include the transcript from petitioner's guilty plea in district court and we must assume that his plea was voluntary, informed and intelligent for purposes of due process analysis under the Fifth Amendment. Allen v. McCurry,449 U.S. 90 (1980); see Gray v. Commissioner,708 F.2d 243, 245 (6th Cir. 1983) (collateral estoppel applies to civil fraud under section 6653(b) following guilty plea under section 7201, notwithstanding district court's failure to specifically advise taxpayer of the collateral consequences of guilty plea). It is well established that a conviction after a trial on the merits under section 7201 for criminal tax evasion in district court collaterally estops the convicted taxpayer from subsequently denying the specific intent requirement of civil fraud under section 6653(b). Amos v. Commissioner,43 T.C. 50 (1964), *606 affd. 360 F.2d 358 (4th Cir. 1965) (distinguishing Vassallo v. Commissioner,23 T.C. 656 (1955), and overruling Safra v. Commissioner,30 T.C. 1026 (1958)); Tomlinson v. Lefkowitz,334 F.2d 262 (5th Cir. 1964) (applying collateral estoppel in the context of a district court refund suit subsequent to a conviction for tax evasion); cf. Meier v. Commissioner,91 T.C. 273 (1988) (Amos not followed only to the extent it prescribes a test based upon "ultimate" versus "evidentiary" facts in applying the doctrine of collateral estoppel or issue preclusion); Worcester v. Commissioner,370 F.2d 713, 719 n.6 (1st Cir. 1966); see also Commissioner v. Sunnen,333 U.S. 591, 597-599 (1948). This Court has applied criminal tax evasion guilty pleas to collaterally estop taxpayers from subsequently denying the specific intent requirement of civil fraud. Brooks v. Commissioner,82 T.C. 413, 431 (1984), affd. without published opinion 772 F.2d 910 (9th Cir. 1985); Arctic Ice Cream Co. v. Commissioner,43 T.C. 68 (1964); *607 see Plunkett v. Commissioner,T.C. Memo. 1970-274, affd. 465 F.2d 299 (7th Cir. 1972). Civil fraud is composed of two prongs: (1) specific intent to defraud the government through the evasion of income taxes and (2) an underpayment of tax owed. Hebrank v. Commissioner,81 T.C. 640, 642 (1983); Habersham-Bey v. Commissioner,78 T.C. 304, 311-312 (1982). A guilty plea to criminal tax fraud works to collaterally estop taxpayers from denying the first prong or specific intent requirement, which is satisfied by taxpayers' informed and voluntary guilty pleas to tax evasion. Allen v. McCurry, supra at 94-95 (citing Montana v. United States,440 U.S. 147, 153-155 (1979)). The second prong or the existence of an underpayment must still be shown by the Commissioner. Accordingly, petitioner's guilty plea to charges of criminal tax evasion under section 7201 for the taxable year 1975 is determinative of the specific intent requirement of fraud under section 6653(b), and he is collaterally estopped *608 from contesting the specific intent requirement of civil fraud for 1975 in this proceeding. Stone v. Commissioner,56 T.C. 213, 220-223 (1971); Meyers v. Commissioner, supra. Furthermore, although the statutory notice of deficiency was issued more than three years after petitioner's 1975 return was filed, section 6501(c) operates to prevent the bar of the statute of limitations for 1975 as to any underpayment of tax. Bank Deposits Method of Calculation -- 1972 through 1975
Where a taxpayer fails to maintain or produce adequate books and records, section 446 authorizes respondent to compute the taxpayer's taxable income by any method which, in respondent's opinion, clearly reflects income. Holland v. United States,348 U.S. 121, 130-132 (1954); Meneguzzo v. Commissioner,43 T.C. 824, 831 (1965); Sutherland v. Commissioner,32 T.C. 862 (1959). Respondent has great latititude in selecting a method for reconstructing a taxpayer's income and his method need only be reasonable in light of all the surrounding *609 circumstances. Petitioner failed to produce records; hence, respondent employed the bank deposits method to calculate petitioner's income and expenditures. This Court has long accepted the bank deposits method of income reconstruction. Nicholas v. Commissioner,70 T.C. 1057, 1065 (1978); Estate of Mason v. Commissioner,64 T.C. 651, 656-657 (1975), affd. 566 F.2d 2 (6th Cir. 1977). While not conclusive, bank deposits are prima facie evidence of income. Boyett v. Commissioner,204 F.2d 205 (5th Cir. 1953), affg. a Memorandum Opinion of this Court; Hague Estate v. Commissioner,132 F.2d 775 (2d Cir. 1943), affg. 45 B.T.A. 104 (1941). Petitioner thus must show that the deposits had a non-taxable source. Once respondent in his notice of deficiency has determined that the unexplained deposits and cash expenditures constitute unreported income, the burden of proving respondent's determination erroneous *610 rests with petitioner. Nicholas v. Commissioner, supra at 1064-1065; Tokarski v. Commissioner,87 T.C. 74, 75-77 (1986); Harper v. Commissioner,54 T.C. 1121, 1129 (1970). Petitioner has failed to disprove respondent's computations for the taxable years in dispute. Petitioner claims he had financial records which were inadvertently disposed of by a cleaning service. Petitioner has been unable to reconstruct any such expenditures. In any case, his alleged loss occurred well over a year after respondent's audit was commenced. Petitioner had plenty of time to substantiate his returns as filed, and he has failed to do so. Civil Fraud under Section 6653(b) for 1972 through 1974
Petitioner did not enter a guilty plea for the taxable years 1972 through 1974. Thus, we must determine whether both the specific intent and underpayment requirements of civil fraud are met in those years. As previously stated, the burden of proving fraud is on respondent. Section 7454(a); Rule 142(b). Fraud within section 6653(b) is an intentional wrongdoing; *611 the intent required is a specific purpose to evade a tax believed to be owing. McGee v. Commissioner,61 T.C. 249, 256 (1973), affd. 519 F.2d 1121 (5th Cir. 1975). In order to prove that an underpayment of tax is due to fraud, respondent must prove, by clear and convincing evidence, that the taxpayer had the specific purpose and intent to evade tax. The existence of fraudulent intent can be established by circumstantial evidence and reasonable inferences drawn from the record. Stoltzfus v. United States,398 F.2d 1002, 1005 (3d Cir. 1968). However, the mere suspicion of fraud is insufficient because fraud will never be presumed. Rowlee v. Commissioner,80 T.C. 1111, 1123 (1983). In Bradford v. Commissioner,796 F.2d 303, 307 (9th Cir. 1986), affg. T.C. Memo. 1984-601, the Ninth Circuit gave a non-exclusive list of circumstantial evidence which may give rise to a finding of fraudulent intent. Some of these "badges of fraud" include: (1) understatement of income, (2) maintenance of inadequate *612 records, (3) failure to file tax returns, (4) implausible or inconsistent explanations of behavior, (5) concealment of assets and (6) failure to cooperate with tax authorities. Petitioner has displayed these badges prominently. First, as discussed earlier, he understated his income consistently between 1972 and 1975. Second, he testified that his records were thrown out by a cleaning service, offering a civil complaint, his testimony and summary sheets to support his allegation. However, he failed to pursue the civil action he originally commenced. We are unpersuaded by his explanations and conclude that his maintenance of records was either nonexistent or conveniently self-censored. In his petition petitioner asserted that he lost his records in April, 1978. Respondent's audit was commenced in January, 1977. Petitioner thus had over a year before the claimed loss occurred to allow respondent's agents access to his records for audit purposes and to substantiate his returns as filed. Respondent's audit was completed in September, 1978, which indicates that respondent had almost completed his audit by the time the records were supposedly lost. We must assume that petitioner *613 had records during respondent's audit which petitioner was intentionally withholding. Third, petitioner claims to have filed returns in 1974 and 1975 in a timely fashion, but alleges that either the IRS or the postal service lost these returns. Returns for these years were filed in January, 1977, after respondent's special agent contacted and informed petitioner of respondent's investigation. Petitioner testified that he had previously been audited by the IRS for the years 1966, 1967 and 1968. He also testified that "The agent here in 1968 told me -- he said, I would -- I am going to make a notation here to Dallas that they should audit you again soon. Now, here is a guy that knows that you are in a business that is vulnerable to audits anyway. Why would I go to Dallas and try and skim out some tax when I know that the Government is looking on top of you?" Petitioner thus asks us to infer that it would have been illogical for him not to have been punctilious about filing in years subsequent to 1968. We decline to draw such inference. Furthermore, petitioner failed to show that he ever questioned as to why his checks representing 1974 and 1975 tax payments were never negotiated *614 by the IRS. He also retained no evidence of proof of mailing, such as certified or registered mail receipts. See section 7502. We are convinced that petitioner failed to file for 1974 and 1975 until long after the audit for those years had commenced and that no returns for those years had ever been filed until January, 1977. Fourth, the record discloses petitioner's attempt to conceal his assets by such means as maintaining numerous bank accounts in scattered locations, cashing third-party checks and paying his workers in cash. Such conduct, when considered with petitioner's other conduct of his affairs, leads to the reasonable inference that petitioner was attempting to conceal his assets. Fifth, although petitioner was generally cooperative with respondent's agents, their wiretap indicated that petitioner was withholding information, and his conveniently timed loss of records after the investigation was almost completed is strong confirmation that he withheld significant information from the IRS agents. The Ninth Circuit in Bradford v. Commissioner, supra, further stated that *615 the existence of the following additional facts would support a finding of fraudulent intent: (1) the taxpayer's engaging in an illegal activity, (2) his attempt to conceal such activity, (3) his dealing in large amounts of cash and (4) his failing to make estimated tax payments. As detailed in our findings of fact, we have found that petitioner was engaged in the illegal activity of mail fraud as demonstrated by his conviction. His behavior was indicative of attempting to conceal such activity, both in keeping 13 bank accounts in various towns throughout Texas and in his transient business practices. He dealt almost exclusively in cash and, as stated, liquidated third-party checks by endorsing them and then using the proceeds to pay his employees. He made no estimated tax payment for 1975. Substantial understatement of income for several successive years is also strong evidence of fraudulent intent. Rogers v. Commissioner,111 F.2d 987, 989 (6th Cir. 1940); Conforte v. Commissioner,74 T.C. 1160, 1201 (1980), affd. in part, revd. in part 692 F.2d 587 (9th Cir. 1982). *616 For all of the foregoing reasons, we hold that petitioner is liable for the additions to tax for fraud under section 6653(b) for the years 1972, 1973, 1974 and 1975. Section 6654(a)
Generally, where prepayments of tax, either through withholding or by making estimated quarterly tax payments during the course of the year, do not equal the percentage of total liability required under the statute, imposition of the section 6654(a) addition to tax is mandatory. However, the addition is not imposed if the taxpayer can demonstrate that one of several statutory exceptions applies. Section 6654; Grosshandler v. Commissioner,75 T.C. 1, 20-21 (1980); Estate of Ruben v. Commissioner,33 T.C. 1071, 1072 (1960). Petitioner has not shown that any of these exceptions apply. Therefore, he is liable for the section 6654(a) additions to tax for 1975. Delay
Petitioner has raised the issue of the possible injustice caused by the length of time between filing of returns for the taxable years at issue and the trial date in this case. Suffice it to say, *617 as our findings of fact reveal, that most, if not all, of any delay was brought about by petitioner's own dilatory tactics in preventing this case from coming to a dispositive conclusion. Petitioner must show actual prejudice from delay, which he has failed to do, in order to become entitled to due process relief. Riland v. Commissioner,79 T.C. 185, 197 (1982). To reflect the foregoing, Decision will be entered for the respondent.
Footnotes
1. Unless otherwise indicated, all section references are to sections of the Internal Revenue Code as in effect for the years in question. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. The Fifth Circuit's summary of the events surrounding petitioner's criminal prosecution for mail fraud is contained in United States v. Huff,637 F.2d 368↩ (5th Cir. 1981).