**Paul F. GRAY, Jr., Petitioner-Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

**No. 81–1389.**

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 14, 1982.

Decided June 6, 1983.

Rehearing and Rehearing En Banc
Denied Sept. 30, 1983.

Merritt, Circuit Judge, dissented and filed an opinion.

---

Leslie Shields (argued), Kramer, Johnson, Rayson, McVeigh & Leake, Knoxville, Tenn., for petitioner-appellant.

Jerome D. Sebastian, Acting Chief Counsel, George M. Sellinger, I.R.S., John F. Murray, Michael L. Paup, Daniel F. Ross, Thomas M. Preston (argued), Tax Div., Dept. of Justice, Washington, D.C., for respondent-appellee.

Before ENGEL and MERRITT, Circuit Judges, and BROWN, Senior District Judge.*

WESLEY E. BROWN, Senior District Judge.

This is an appeal from a decision of the United States Tax Court which sustained the Commissioner's determination of certain deficiencies in the federal tax returns of appellant, Paul F. Gray, Jr., for the years 1968, 1969, and 1970, which imposed certain fraud penalties pursuant to 26 U.S.C. § 6653(b). In particular, the Tax Court found that Gray was collaterally estopped from denying that his returns for the years in question were fraudulent, in view of his previous pleas of guilty to charges of income tax evasion for those years.

The only issue presented for review in this appeal is whether or not the Tax Court was correct in holding that Gray was collaterally estopped from denying liability for civil penalties as a result of his guilty pleas under 26 U.S.C. § 7201.

Appellant was indicted March, 1975 in the Eastern District of Tennessee on three counts of knowingly and willfully attempting to evade and defeat income taxes for the years 1968, 1969 and 1970, by submitting false returns, in violation of 26 U.S.C. § 7201.[1] Gray pled guilty to each count of the indictment and received a sentence of 18 months on Count I, two years' probation on Counts II and III, and a fine of $2,000 on each of the three counts. The sentence on Count I was suspended except for 100 days to be served in a "jail type" institution. At the time the pleas were entered Gray was aware of the fact that no disposition was being made of his civil tax liabilities.

In April, 1976, after the criminal matter was disposed of, the Commissioner issued the required statutory notices of deficiency for the taxable years 1968–1970, including additional civil penalties provided by 26 U.S.C. § 6653(b),[2] in the following amounts: [3]

\* The Honorable Wesley E. Brown, Senior Judge, United States District Court for District of Kansas, sitting by designation.

1. § 7201. *Attempt to evade or defeat tax:*
   Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, shall be fined not more than $10,000, or imprisoned not more than 5 years, or both, together with the costs of prosecution.

2. § 6653. *Failure to pay tax.*

\* \* \* \* \* \*

(b) *Fraud.*—If any part of any underpayment . . . of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment . . . .

3. In addition to the taxable years 1968–1970, the years covered by the criminal indictment, the Commissioner issued a separate statutory notice finding deficiencies, with additions, for the tax year 1972. The 1972 tax claim has been settled and is not an issue in this appeal.

| Year | Deficiency | Additions |
|------|-----------|-----------|
| 1968 | $22,466.07 | $11,223.03 |
| 1969 | 40,767.94 | 20,383.97 |
| 1970 | 39,134.47 | 19,567.23 [3] |

Gray petitioned the Tax Court for a redetermination of the asserted deficiencies, and additions to the tax. The United States filed a motion for partial summary judgment, alleging that Gray was collaterally estopped, by his plea of guilty in the criminal tax prosecution, from denying liability for civil penalties under Section 6652(b). In opposing the motion, Gray contended that his pleas were not conclusive in regard to civil penalties, and he sought partial summary judgment to the effect that any deficiency should be limited to the amounts alleged in the criminal indictment, with civil fraud penalties to be limited to 50% of those figures.

On November 27, 1979, the Tax Court granted the government's motion for partial summary judgment, and denied Gray's motion, ruling that Gray was "collaterally estopped from denying that parts of the underpayments of income tax for the taxable years ... are due to fraud."

Gray next filed in the criminal case in Tennessee a petition for a Writ of Error Coram Nobis for the purpose of vacating and setting aside his convictions, and to permit him to withdraw his pleas of guilty in that proceeding. The petition was denied and this decision was affirmed by this Circuit, without published opinion, *Gray v. United States of America*, 663 F.2d 1071 (6th Cir.1981). In that appeal, a panel of this court determined that the collateral estoppel effect of a guilty plea in a later civil tax case is a collateral consequence of the guilty plea, and that it was therefore unnecessary for the district court to have specifically advised Gray of the collateral consequences of his plea. It was further held that there was no evidence that the United States Attorney had misled Gray in any respect regarding the separate issue of his civil tax liabilities.[4]

After further hearing in the Tax Court, the parties agreed to the Commissioner's computations, and under stipulated facts, it was found that Gray had additional taxable income of $53,543.83, $69,736.76, and $106,141.66, respectively for the years 1968, 1969, and 1970. From these figures, the Tax Court determined that tax deficiencies for those years were in the sums of $19,534.11, $27,594.80, and $38,054.96. Additions to these taxes under the provisions of § 6653(b) were found to be in the amounts of $9,767.06, $13,979.40, and $19,027.48.

In this appeal, Gray contends that it was error to apply the doctrine of collateral estoppel because estoppel operates only upon matters and questions actually litigated. Appellant claims that his guilty pleas in the criminal case, were like a consent decree in a civil case, and not an adjudication on the merits of the fraud issue.

While Gray concedes that there are federal cases which would permit the application of collateral estoppel in this instance, he argues that such cases are distinguishable, and not applicable to his situation. He further contends that such cases are not binding upon this court, that they are in conflict with "the weight of state authorities on the issue," and that an application of collateral estoppel here would conflict with the holding of the Supreme Court in *United States v. International Building Co.*, 345 U.S. 502, 73 S.Ct. 807, 97 L.Ed. 1182 (1953).

In *International Building*, deficiencies were assessed against the corporate taxpayer for the years 1933, 1938, and 1939, be-

---

4. In this appeal, the Circuit stated:

"A guilty plea must conform to the constitutional standards of voluntariness because it has the effect of a conviction and waiver of the constitutional right to a jury trial... In order for the guilty plea to be voluntarily made the defendant must be made aware of all direct consequences of his plea ... the courts have held that the defendant need not be advised of the collateral consequences of his plea....

"Since the collateral estoppel effect of a guilty plea in a subsequent civil tax case constitutes a collateral consequence of the guilty plea ... it was unnecessary for the district court to have advised the defendant of the civil ramifications of his guilty plea. Nor is there any evidence in the record to indicate that the U.S. Attorney's statement misled the defendant with respect to the separate issue of civil liability."

cause of a determination that taxpayer had used an improper basis of depreciation for certain property. By a joint stipulation, the deficiencies were abated and the Tax Court entered decisions that there were no deficiencies for those years. In 1948, the Commissioner assessed deficiencies in taxes for the years 1943, 1944, and 1945, again challenging the basis for depreciation used by taxpayer. After paying the deficiencies and suing for refund, the taxpayer claimed that the prior decisions regarding taxable years 1933, 1938 and 1939 were *res judicata* as to the question of the proper basis for depreciation. In determining that the prior decision was not binding, the court found that it was not clear that the merits of the depreciation dispute had been determined in the first case.

The *International Building* case is clearly distinguishable from Gray's situation. The record establishes that the District Court fully examined appellant with respect to his understanding of the charges contained in the indictment, and Gray affirmatively stated that he had indeed filed false tax returns, and that he had done so, with the intent to evade the payment of taxes.[5] The record is clear that Gray voluntarily chose to plead guilty to the charges, and a forthright judicial determination was made that he was guilty as charged in each instance.

■ A guilty plea is as much a conviction as a conviction following jury trial. The elements of criminal tax evasion and civil tax fraud are identical. See *Hicks Co., Inc. v. C.I.R.,* 470 F.2d 87, 90 (1 Cir.1972); *Moore v. United States,* 360 F.2d 353, 356 (4

Cir.1965, as modified), *cert. den.* 385 U.S. 1001, 87 S.Ct. 704, 17 L.Ed.2d 541 (1967).

Numerous federal courts have held that a conviction for federal income tax evasion, either upon a plea of guilty, or upon a jury verdict of guilt, conclusively establishes fraud in a subsequent civil tax fraud proceeding through application of the doctrine of collateral estoppel. See *Fontneau v. United States,* 654 F.2d 8, 10 (1 Cir.1981) (guilty plea); *Plunkett v. C.I.R.,* 465 F.2d 299, 305–307 (7 Cir.1972) (guilty plea); *Neaderland v. C.I.R.,* 424 F.2d 639, 642 (2d Cir.1970) *cert. den.* 400 U.S. 827, 91 S.Ct. 53, 27 L.Ed.2d 56 (1970); *Moore v. United States, supra,* 360 F.2d 353 at 355–356 (conviction following trial); *Amos v. C.I.R.,* 360 F.2d 358 (4 Cir.1965) *affirming* 43 T.C. 50; *Armstrong v. United States,* 354 F.2d 274, 291 (Ct.Cl.1965) (conviction following trial); *Tomlinson v. Lefkowitz,* 334 F.2d 262, 264–265 (5 Cir.1964) *cert. den.* 379 U.S. 962, 85 S.Ct. 650, 13 L.Ed.2d 556 (1965) (conviction following trial.) See also, *Arctic Ice Cream Co. v. Commissioner,* 43 T.C. 68, 75 (1964) and the recent decisions in *Acker v. United States,* (N.D.Ohio 1981) 519 F.Supp. 178, 182, and *Considine v. United States,* 683 F.2d 1285 (9 Cir.1982).

■ In the face of the foregoing authorities, appellant's citation of state cases is not persuasive. Indeed, he recognizes that "most of the federal cases take the opposite position" to that which he urges in this appeal.[6] We conclude that appellant's contention that he has been denied his day in court with respect to the issue of fraud is without merit.

THE COURT: Well, did you file a false tax return as charged in the first count of the indictment?
MR. GRAY: Yes, sir.
THE COURT: And at the time you did so did you do so with the intent to evade the payment of the tax as charged in the first count?
MR. GRAY: Yes, Sir."

5. "THE COURT: Now, Mr. Gray, let me go over this with you and make certain it would be proper to permit you to enter pleas of guilty upon the three counts in the indictment in this case.
Do you understand that in the first count it is charged that for the calendar year 1968 that you filed a false income tax return, that you did so with intent to evade the payment of taxes and reported income of twenty-eight thousand some odd dollars whereas your taxable income was in the sum of sixty-two thousand and some odd dollars, do you understand that is what you are charged with in this first count?
MR. GRAY: Yes, sir.

6. In supplementing his brief, appellant refers us to *Kreps v. C.I.R.* 351 F.2d 1 (2 Cir.1965), which, in dictum, refers to a criminal conviction as being "evidence" of fraud. We find this case to be distinguishable and of no persuasive force.

The judgment of the Tax Court is AFFIRMED.

MERRITT, Circuit Judge, dissenting.

The principles of *res judicata* and collateral estoppel and the subsidiary doctrines of claim preclusion and issue preclusion, *see generally Restatement of Judgments (Second)* (1982) reflect a judicial purpose to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980). These are sound policy objectives, but before deciding whether to give preclusive effect to a prior criminal judgment, we should consider any countervailing factors that might outweigh the salutary effects of a broad preclusion rule.

The Court holds for the first time in this Circuit that a taxpayer's plea of guilty to tax fraud charges precludes him in subsequent civil proceedings from contesting liability for fraud penalties assessed on tax deficiencies for the period associated with those charges. Two federal circuit courts have upheld the application of collateral estoppel against taxpayers who—like the petitioner in the instant case—had pleaded guilty to tax evasion charges under 26 U.S.C. § 7201. *See Fontneau v. United States,* 654 F.2d 8 (1st Cir.1981); *Plunkett v. Commissioner,* 465 F.2d 299 (7th Cir. 1972). Gray contends, however, that both of these defendants are distinguishable from his case because, unlike the defendants in *Fontneau* and *Plunkett,* he did not understand and was not told that his guilty plea would have collateral consequences in subsequent civil proceedings. The majority implicitly rejects this distinction by observing that this Court has already held that the district judge who took Gray's plea did not have to advise him of these collateral consequences in order to ensure the plea's voluntariness. (*Ante* at p. 245, n. 4.)

Yet, whether Gray's plea was voluntary as a matter of fifth amendment due process is a very different question from whether he should now be estopped from litigating the issue of the origin of his tax deficiencies under 26 U.S.C. § 6653(b). In *Allen v. McCurry, supra,* 449 U.S. at 94–95, 101 S.Ct. at 414–415, the Supreme Court reiterated the standards governing the use of collateral estoppel, recognizing that the doctrine may apply "once a court has decided an issue of fact or law necessary to its judgment ... [but] cannot apply when the party against whom the earlier decision is asserted did not have a 'full and fair opportunity' to litigate that issue in the earlier case." (citing *Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979); *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 328–29, 91 S.Ct. 1434, 1442–43, 28 L.Ed.2d 788 (1971). The issue in Gray's case is thus whether his guilty plea constitutes an adjudication on the fraud question, and, if so, whether the plea procedure afforded him a "full and fair opportunity" to litigate that question.

Although § 85 of the *Second Restatement of Judgments* specifically provides for the preclusive effect of a criminal judgment in subsequent civil proceedings, a comment following that section notes that this rule "presupposes that the issue in question was actually litigated in the criminal prosecution." *Restatement of Judgments (Second)* § 85, Comment b (1982). Thus, the comment concludes that § 85 does not apply to a guilty plea "because the issue has not actually been litigated." *Id.* Also espousing this view, Professor Moore states:

A judgment based upon the parties' consent provides no reasonable basis for inference that the parties litigated, or the court adjudicated, any issue—it indicates the contrary. Since the rationale of collateral estoppel requires litigation and adjudication to make the issues conclusive in subsequent litigation, there is no more basis for applying the doctrine to a conviction by consent than to a civil judgment by consent, and generally this civil judgment does not have collateral estoppel effect.

1B J. Moore, *Moore's Federal Practice* ¶ 0.418[1] at 2707–08 (2d ed. 1982). *Accord* C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure* § 4474, at 760 (1981) ("Conviction upon a plea of guilty does not rest on actual adjudication or determination of any issue. Just as issue preclusion should not rest on civil judgments by consent, stipulation or default, so it should not rest on a plea of guilty.")

Despite the view of these commentators and the American Law Institute that a guilty plea conviction does not represent an adjudication of the issues in the case, the majority refuses to distinguish between guilty pleas and jury trial convictions for collateral estoppel purposes. In reaching its decision, the majority observes that "[a] guilty plea is as much a conviction as a conviction following jury trial." *Ante,* at 246. While clearly correct as a statement of substantive law, this observation begs the essential question that we confront in this case: as a matter of judicial policy, should the courts give preclusive effect to guilty pleas?

Even assuming *arguendo* that—contrary to the consensus of the legal commentators discussed above—a guilty plea conviction *does* constitute a formal adjudication, I do not agree that the plea procedure and its attendant circumstances afforded Gray a "full and fair opportunity" to litigate the fraud issue. Like most criminal defendants, Gray faced a powerful incentive to strike a plea bargain in which he exchanged his right to litigate the government's charges in return for a relatively lenient sentence. *See Bordenkircher v. Hayes,* 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978) (permitting prosecutors to reduce guilty pleas by threatening defendants with more serious charges); J. Bond, *Plea Bargaining and Guilty Pleas* (2d ed. 1982) (describing incentives to plead guilty); Klein, *Inducements to Plead Guilty: Frontier Justice Revisited,* in P. Wickman and P. Whitter, *Readings in Criminology* (1978) (describing tactics used by prosecutors to persuade defendants to plead guilty). In the United States, guilty pleas account for approximately 90% of all criminal convictions.

U.S. Dep't of Justice, Nat'l Inst. of Justice, *Plea Negotiation* (1980).

Widely recognized as an effective device to further the important societal goal of reducing the number of criminal trials on crowded court dockets, *see, e.g., Bordenkircher v. Hayes, supra,* at 364, 98 S.Ct. at 668 (Supreme Court "has necessarily accepted as constitutionally legitimate the simple reality that the prosecutor's interest at the bargaining table is to persuade the defendant to forego his right to plead not guilty"); *Blackledge v. Allison,* 431 U.S. 63, 71, 97 S.Ct. 1621, 1627, 52 L.Ed.2d 136 (1977) (characterizing guilty plea and concomitant plea bargain as "important components of this country's criminal justice system"); *Santobello v. New York,* 404 U.S. 257, 261, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971) (disposition of charges after plea discussions considered essential and highly desirable part of the criminal process), plea bargaining fundamentally alters the strategy that a defendant would otherwise pursue in responding to criminal charges. Acknowledging this effect, Justice Roger Traynor found that the additional considerations presented by plea bargaining render collateral estoppel inappropriate in guilty plea settings:

> When a plea of guilty has been entered in the prior action, no issues have been "drawn into controversy" by a "full presentation" of the case. It may reflect only a compromise or a belief that paying a fine is more advantageous than litigation. Considerations of fairness to civil litigants and regard for the expeditious administration of criminal justice ... combine to prohibit the application of collateral estoppel against a party who, having pleaded guilty to a criminal charge, seeks for the first time to litigate his cause in a civil action.

*Teitelbaum Furs, Inc. v. Dominion Insurance Co.,* 58 Cal.2d 601, 605–06, 25 Cal.Rptr. 559, 561, 375 P.2d 439, 441 (1962).

The majority's collateral estoppel rule permits the government to whipsaw tax fraud defendants by first inducing them to enter guilty pleas through attractive plea

bargain offers and then suing them in civil proceedings where the taxpayers cannot contest their liability. A defendant's decision whether to plead guilty is often difficult when limited to criminal law considerations. I believe that the appending of civil consequences unfairly complicates the criminal defendant's position, and that for purposes of plea bargaining, the criminal process should stand alone. As in other settings where the government invites the cooperation of criminal defendants, the furthering of society's interest in expediting its judicial process should not entitle the government to reap collateral dividends. *Cf.* Note, *Standoff Situations and the Fifth Amendment,* 91 Yale L.J. 344 (1981) (desirability of having police negotiate surrenders in hostage situations should not supersede suspects' fifth amendment rights).

The unfairness that Justice Traynor discusses is compounded by the rule's asymmetrical orientation. Because of the government's enhanced burden of proof in criminal cases, acquittal at the criminal stage will not create any estoppel against the government at the civil level. Under the doctrine of mutuality of parties that formerly governed the application of collateral estoppel, "neither party could use a prior judgment as an estoppel against the other unless both parties were bound by the judgment." *Parklane Hosiery v. Shore,* 439 U.S. 322, 326–27, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979) (citing *Bigelow v. Old Dominion Copper Co.,* 225 U.S. 111, 127, 32 S.Ct. 641, 642, 56 L.Ed. 1009 (1912). Both parties thus enjoyed equal access to the judgment for collateral estoppel purposes. Although recent federal and state cases display a distinct trend repudiating the mutuality doctrine, *Parklane Hosiery Co. v. Shore, supra,* 439 U.S. at 326–27, 99 S.Ct. at 649; 1B J. Moore, *Moore's Federal Practice* ¶ 412[1] at 1804 (2d ed. 1982) (Supp.), these cases do not discuss the problem of asymmetry resulting from different burdens of proof. On the contrary, they involve purely civil settings, which do not engender the same "settlement" inducements that characterize plea negotiations. This qualitative difference between civil and criminal cases

convinces me that the lack of mutuality assumes critical importance in tax fraud cases.

Of course, under the majority's rule, taxpayers facing criminal charges would appear to have the benefit of collateral estoppel if they first prevailed against the government in civil proceedings. *See Yates v. United States,* 354 U.S. 298, 335–36, 77 S.Ct. 1064, 1085, 1 L.Ed.2d 1356 (1957) (adverse findings in civil proceeding may prevent government from relitigating issue in criminal prosecution). However, the government follows a policy which obviates such a turn of events. It simply prosecutes the criminal case first, a policy that ensures the government's advantageous position regarding collateral estoppel. This observation highlights yet another negative ramification of the majority's rule. In establishing the procedures governing conventional tax litigation, Congress has decided that the taxpayer who wishes to challenge the Commissioner's assessment may choose to sue in the Tax Court, the Court of Claims, or a federal district court. *See* B. Bittker, *Federal Taxation of Income, Estates and Gifts* ¶ 115–1, at 115–2–115–4 (1981) (discussing various factors that influence taxpayer's choice of forum in deficiency cases). The majority's rule effectively eliminates this choice from the arsenal of the taxpayer in Gray's position, for it transfers the initiative to the government and restricts litigation of tax liability to the district courts conducting the criminal proceedings. Note, *Collateral Estoppel in Civil Tax Fraud Cases Subsequent to Criminal Conviction,* 64 Mich.L.Rev. 317, 323 (1965).

The benefits likely to accrue from the majority's position are meager. As noted above, the policy of precluding litigation following judgment embodies the goals of conserving judicial resources, preventing inconsistent decisions, and insulating parties from the harassment of multiple lawsuits. Of these three objectives, only the first is even arguably furthered by this Court's holding today. But application of collateral estoppel to the fraud issue in civil tax cases will not markedly increase the yield of judicial efficiency. Extending only to the question of liability for tax fraud, this estoppel

will not establish the precise amount of a taxpayer's deficiency attributable to the fraud, an issue that the taxpayer will remain free to contest in the civil forum. *See* Note, *Collateral Estoppel in Civil Tax Fraud Cases Subsequent to Criminal Conviction,* 64 Mich.L.Rev. 317, 322 (1965).

Finally, this Court need not adopt so drastic a measure in order to protect the government's right to use guilty pleas in civil cases. Like any judicial admission, a guilty plea would be admissible in court. Federal Rule of Evidence 803(22) specifically establishes the unqualified admissibility of guilty pleas in civil cases.[1] I would rely on the solution provided by the Federal Rules of Evidence making the plea admissible on the issue of civil liability, rather than a solution that takes unfair advantage of the taxpayer's decision to plead guilty, a decision made perhaps only to avoid the risks and uncertainty of a criminal trial and of years of imprisonment, a decision made without knowledge that the taxpayer, after paying his fine, would automatically lose his property as well in a later civil proceeding where he would be barred from litigating the issue of civil liability.

---

1. The same rule also explicitly excludes pleas of *nolo contendere* from the scope of this exception to the hearsay rule. Such pleas are also not considered admissions, hence the distinction between pleading guilty and pleading *nolo contendere*. *See Restatement of Judgments (Second)* § 85, Comment b (1982).