LEONARD JOSEPH GALLUCCI, JR., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; JAMES P. GALLUCCI, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Gallucci v. Commissioner
Docket Nos. 11552-90, 17885-90
United States Tax Court
T.C. Memo 1992-435; 1992 Tax Ct. Memo LEXIS 461; 64 T.C.M. (CCH) 347; August 3, 1992, Filed *461 Decision will be entered for respondent in docket No. 11552-90. Decision will be entered under Rule 155 in docket No. 17885-90. For Leonard Joseph Gallucci, pro se in docket No. 11552-90. For James P. Gallucci, pro se in docket No. 17885-90. For Respondent: Ronald T. Jordan. WRIGHT
WRIGHT
MEMORANDUM FINDINGS OF FACT AND OPINION WRIGHT, Judge: The cases of petitioner Leonard Joseph Gallucci, docket No. 11552-90, and petitioner James P. Gallucci, docket No. 17885-90, were consolidated for purposes of trial and opinion. In these consolidated cases, respondent determined deficiencies in and additions to petitioners' Federal income tax as follows: Leonard J. Gallucci, docket No. 11552-90
Additions to Tax
Year
Deficiency
Sec. 6653(b)
Sec. 6653(b)(1)
Sec. 6654
1979
$ 3,034
$ 1,517
$ 128
1980
8,462
4,231
540
1981
17,467
8,734
1,339
1982
43,722
$ 21,861 [1]
4,255
1983
122,104
61,052 [1]
7,480
1984
2,040
1,020 [1]
127
1985
4,641
2,321 [1]
266
*462 James P. Gallucci, docket No. 17885-90
Additions to Tax
Year
Deficiency
Sec. 6653(b)
Sec. 6653(b)(1)
Sec. 6654
1979
$ 8,402
$ 4,201
$ 350
1980
1,415
708
90
1981
1,737
869
132
1982
38,491
$ 19,246 [1]
3,746
1983
1,775
888 [1]
108
1984
2,188
1,094 [1]
136
1985
28,999
14,500 [1]
11,662
Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. The issues presented for decision are: (1) Whether petitioners failed to report income in the taxable years at issue in the amounts determined by respondent. We hold that petitioner Leonard Gallucci failed to report such income. We hold that petitioner James Gallucci failed to report such income but in amounts lesser than those determined by respondent. (2) Whether the plea bargain arrangements *463 entered into by petitioners in previous criminal prosecutions immunize them from civil tax liability for the years at issue. We hold that they do not. (3) Whether petitioners are liable for the additions to tax for failure to pay estimated taxes. We hold that they are. (4) Whether petitioners are liable for the additions to tax for fraud. We hold that they are. FINDINGS OF FACT Some of the facts have been stipulated and are incorporated in this opinion by reference. Petitioners resided in Columbus, Ohio, at the time they filed their petitions. During each of the years at issue, petitioners engaged in the sale of marijuana and earned income therefrom. Petitioners maintained no books or records on the income derived from the sale of marijuana, maintained no bank accounts, and dealt in cash or cashier's checks in all of their financial affairs. Neither petitioner filed a Federal income tax return or paid any Federal income taxes in the years at issue. In taxable year 1979, petitioners Leonard and James Gallucci, brothers, jointly purchased a motor boat for $ 14,494. Petitioners titled the boat in their mother's name, as nominee. In 1979, James purchased an automobile for *464 $ 13,341, and in 1984 purchased another automobile for $ 527. Between 1980 and 1981, Leonard purchased an automobile for $ 15,226, a motorcycle for $ 4,500, and a Mercedes Benz for $ 31,726. Petitioners purchased each of the above-referenced assets with cash and/or cashier's checks. Because petitioners failed to keep books and records regarding their income, respondent reconstructed their 1979 through 1985 taxable income pursuant to the sources and applications method. Pursuant to this method, respondent added together each petitioner's estimated personal living expenses, verified expenditures, and cash-on-hand. From this total, respondent subtracted income derived from sources other than the sale of marijuana, of which neither petitioner had any. Using this income reconstruction method, respondent calculated and determined that petitioner Leonard Gallucci received unreported gross income in taxable years 1979 through 1985 in the respective amounts of $ 14,183, $ 27,057, $ 45,238, $ 99,750, $ 259,585, $ 9,993, and $ 18,340. Leonard stipulated that he had personal living expenses and possessed cash-on-hand in the amounts determined by respondent. Leonard also stipulated that *465 he made expenditures in the amounts determined by respondent except that he did not stipulate that he made expenditures of $ 4,762 in 1981, $ 10,464 in 1982, and $ 7,990 in 1985 as determined by respondent. Using the sources and applications method, respondent calculated and determined that petitioner James Gallucci received unreported gross income in 1979 through 1985 in the respective amounts of $ 27,525, $ 7,928, $ 8,750, $ 89,287, $ 9,585, $ 10,520, and $ 74,330. James stipulated that he had personal living expenses and made expenditures in the amounts determined by respondent. James alleges that the amount of $ 63,980 included in his 1985 gross income by respondent as cash-on-hand was not his money. This amount was confiscated by law enforcement authorities from James at his arrest in 1984. James alleges that he was transferring this money for another person. On September 26, 1985, a grand jury indicted petitioners in the United States District Court for the Southern District of Ohio. Petitioners were indicted for conspiracy to unlawfully distribute marijuana, for knowingly, intentionally, and unlawfully distributing 800 pounds of marijuana, and for Federal income tax *466 evasion pursuant to section 7201. During these proceedings, petitioner Leonard Gallucci was represented by the legal counsel of R. Scott Croswell III (Mr. Croswell), and petitioner James Gallucci was represented by the legal counsel of James Rion (Mr. Rion). On January 31, 1986, each petitioner entered a plea agreement with the United States with respect to the criminal charges filed against him. Pursuant to their respective plea agreement, petitioners agreed to plead guilty to the charges filed against them and agreed to forfeit various assets to the United States and/or the State of Ohio. Petitioner Leonard Gallucci alleges that as part of his plea agreement, he agreed to forfeit, inter alia, $ 250,000 in cash that he had buried underground. Both petitioners allege that Government agents assured them that by forfeiting such assets the IRS would not pursue collection of their civil tax liabilities. Neither of petitioner's written plea agreement contains any reference to civil tax liabilities. Mr. Croswell negotiated Leonard's plea agreement on his behalf. James alleges that Mr. Croswell also negotiated his plea agreement on his behalf. James' attorney, Mr. Rion, was not present *467 at the negotiation of his plea agreement but did sign such agreement as "Attorney for Defendant". Mr. Croswell filed an affidavit with this Court in which he stated that Leonard's plea agreement contained no reference to Leonard's civil tax liabilities because each party understood that the U.S. attorney's office could not bind the IRS to such an agreement. Mr. Croswell also stated in his affidavit that Leonard was told at the plea agreement meeting that the IRS probably would not pursue collection of his civil tax liabilities, but there were no guarantees that they would not. Mr. Croswell's affidavit contains no references to petitioner James Gallucci. On January 31, 1986, the U.S. District Court for the Southern District of Ohio entered its judgments pursuant to petitioners' pleas of guilty. Pursuant to these judgments, James was convicted of, inter alia, criminal tax evasion pursuant to section 7201 for taxable year 1979, and Leonard was convicted of, inter alia, criminal tax evasion pursuant to section 7201 for taxable year 1981. OPINION Issue No. 1. Income Tax Deficiencies
Respondent reconstructed petitioners' individual gross income from the sale of marijuana *468 for each of the years at issue pursuant to the sources and applications method. The sources and applications method has been accepted by this Court and the Sixth Circuit Court of Appeals, to which an appeal in the instant case lies. Viles v. Commissioner, 233 F.2d 376 (6th Cir. 1956), affg. T.C. Memo. 1955-142; Vassallo v. Commissioner, 23 T.C. 656 (1955). Respondent's determination of a deficiency in tax is presumptively correct, and petitioners bear the burden of proving it wrong. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 114 (1933). In cases involving the receipt of unreported illegal income, however, this presumption arises only where the deficiency determination is supported by some substantive evidence that the taxpayer received unreported income. Rapp v. Commissioner, 774 F.2d 932, 935 (9th Cir. 1985), affg. an unreported Order of this Court. Once respondent has introduced some evidence linking the taxpayer with the income-producing activity, the presumption of correctness arises and the taxpayer has the burden to rebut the presumption by establishing by a preponderance *469 of the evidence that respondent's deficiency determination is arbitrary or erroneous. Id.
In the instant case, petitioners stipulated that during each of the taxable years at issue they engaged in the unlawful sale of marijuana and earned income therefrom. Accordingly, respondent's deficiency determinations are supported by substantive evidence that petitioners received unreported income and, therefore, respondent's deficiency determinations retain their presumption of correctness. Petitioner Leonard Gallucci stipulated to the accuracy of almost all of the amounts utilized by respondent to reconstruct his 1979 through 1985 gross income. Of the amounts he did not stipulate to, Leonard presented no evidence to dispute respondent's determination that such were includable in his gross income. Accordingly, we sustain respondent's determination that Leonard received unreported gross income in 1979 through 1985 in the amounts determined by respondent. Petitioner James Gallucci stipulated to the accuracy of all but one of the amounts utilized by respondent to reconstruct his 1979 through 1985 gross income. James testified that the $ 63,980 included in his 1985 gross income as *470 cash-on-hand was not his money but rather he was transporting the money for another person. Respondent introduced no evidence disputing James' testimony. Unless positive and uncontradicted testimony of a particular fact is inherently questionable, improbable, or unreasonable, it will ordinarily be accepted. Schad v. Commissioner, 87 T.C. 609, 620 (1986). Nothing exists in the record indicating that James' testimony on this fact is questionable, improbable, or unreasonable. Therefore, we hold that the $ 63,980 is not includable in James' 1985 taxable income as cash-on-hand. Accordingly, we further hold that James failed to report gross income in taxable year 1985 in the amount of $ 10,350, and failed to report gross income in taxable years 1979 through 1984 in the amounts determined by respondent. Issue No. 2. Immunization From Plea Bargain Arrangements
Petitioners contend that they are immune from civil tax liability in each of the years at issue because at the time they entered plea agreements with the Government regarding their criminal charges, the United States agreed not to pursue collection of their civil tax liabilities in exchange for their *471 agreement to forfeit various assets. Neither of petitioner's written plea agreements contains any reference to their civil tax liabilities. Pursuant to the affidavit filed by Leonard's attorney, the agents representing the U.S. attorney at the negotiation of Leonard's plea agreement stated to Leonard that they hoped the IRS would not pursue such but that they could not bind the IRS to such an agreement. Pursuant to Leonard's attorney, the U.S. attorney's agents accordingly made no guarantees regarding the collection of Leonard's civil tax liabilities. We find that the plea bargain arrangements entered into by Leonard do not immunize him from the civil tax liabilities at issue in the instant case. Regarding petitioner James Gallucci, the affidavit filed by Mr. Croswell does not pertain to James. James testified that his plea agreement was nevertheless negotiated on his behalf by Mr. Croswell. Both James and Leonard testified that Government agents promised them immunity from their civil tax liabilities in exchange for their guilty pleas and agreement to forfeit various assets. Because Mr. Croswell was present at this meeting where such alleged promises took place and testified *472 that no such promise was made to Leonard, we find it unlikely such a promise was made to James. Further, because the Government's agents informed Leonard that they could not enter an agreement on behalf of the IRS regarding his civil tax liabilities, we find it unlikely that these same Government agents stated anything different to James. Given the above facts and given that James' written plea agreement contains no reference to his civil tax liabilities, we find that James' plea bargain arrangements do not immunize him from the civil tax liabilities for the years in issue. Issue No. 3. Additions to Tax for Failure to Make Estimated Income Tax Payments
Respondent determined that petitioners were liable for the addition to tax pursuant to section 6654 for failure to make estimated income tax payments for each of the years at issue. Petitioners have presented no evidence to dispute these determinations. Accordingly, we sustain respondent's determinations regarding this addition to tax. See Rule 142(a). Issue No. 4. Additions to Tax for Fraud
Respondent determined that petitioners were liable for the additions to tax for fraud pursuant to section 6653(b)/6653(b)(1) *473 in taxable years 1979 through 1985, and pursuant to section 6653(b)(2) in taxable years 1982 through 1985 in an amount equal to 50 percent of the interest due on the portion of the corresponding underpayment attributable to fraud. By reason of his conviction under section 7201 for taxable year 1981, petitioner Leonard Gallucci is collaterally estopped from denying fraud for that year. Gray v. Commissioner, 708 F.2d 243, 246 (6th Cir. 1983), affg. T.C. Memo. 1981-1; Brooks v. Commissioner, 82 T.C. 413, 431 (1984), affd. without published opinion 772 F.2d 910 (9th Cir. 1985); Arctic Ice Cream Co. v. Commissioner, 43 T.C. 68, 74-76 (1964). By reason of his conviction under section 7201 for taxable year 1979, petitioner James Gallucci is collaterally estopped from denying fraud for that year. Id.
Respondent must still prove fraud in each of the other years involved. Drieborg v. Commissioner, 225 F.2d 216, 220 (6th Cir. 1955), affg. in part and revg. and remg. in part a Memorandum Opinion of this Court dated Feb. 24, 1954. To prove such, respondent must prove by clear *474 and convincing evidence that petitioners intended to evade paying taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of taxes known to be owing. Sec. 7454(a); Rule 142(b); Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983). Because fraud can rarely be established by direct proof of a taxpayer's intent, respondent may establish the required quantum of proof by circumstantial evidence. Rowlee v. Commissioner, supra at 1123. The existence of fraud is a question of fact to be determined upon consideration of the entire record. Id.
In the instant cases, petitioners failed to file Federal income tax returns for any of the years at issue and offered no explanation for their failure to do so. This Court and other courts have not been hesitant to impose the addition to tax for fraud where there has been an intentional failure to file a return. Stoltzfus v. United States, 398 F.2d 1002, 1005 (3d Cir. 1968); Kotmair v. Commissioner, 86 T.C. 1253, 1260 (1986). However, in each case some other independent evidence of fraudulent intent must also be present. *475 Kotmair v. Commissioner, supra at 1260. In addition to petitioners' failure to file Federal income tax returns, there are several other factors present in these consolidated cases which have been labeled indicia of fraud or badges of fraud by this and other courts. Namely, petitioners maintained no books and records of the income derived from the sale of marijuana. Lollis v. Commissioner, 595 F.2d 1189, 1192 (9th Cir. 1979), affg. T.C. Memo. 1976-15; Estate of Upshaw v. Commissioner, 416 F.2d 737, 741 (7th Cir. 1969), affg. T.C. Memo. 1968-123; Cefalu v. Commissioner, 276 F.2d 122, 129 (5th Cir. 1960), affg. T.C. Memo. 1958-37; Otsuki v. Commissioner, 53 T.C. 96, 110 (1969). Petitioners each made several large purchases with cash and dealt exclusively in cash and/or cashier's checks. Friedman v. Commissioner, 421 F.2d 658 (6th Cir. 1970), affg. T.C. Memo. 1968-145; Gromacki v. Commissioner, 361 F.2d 727 (7th Cir. 1966), affg. T.C. Memo. 1964-292. Petitioners *476 purchased assets in the names of nominees, i.e., petitioners' mother, and gave no reason for doing so. Wilson v. Commissioner, 76 T.C. 623, 635 (1981). Finally, petitioners engaged in illegal activities. Bradford v. Commissioner, 796 F.2d 303, 308 (9th Cir. 1986), affg. T.C. Memo. 1984-601; Meier v. Commissioner, 91 T.C. 273, 298 (1988). Taken together, all of these factors, including the failure to file Federal income tax returns, are sufficient to carry respondent's burden of proving fraud by clear and convincing evidence. Accordingly, we sustain respondent's determination that each petitioner is liable for the additions to tax for fraud in each of the years at issue. To reflect the foregoing, Decision will be entered for respondent in docket No. 11552-90. Decision will be entered under Rule 155 in docket No. 17885-90. Footnotes
1. 50 percent of the interest due on the portion of the underpayment attributable to fraud.↩
1. 50 percent of the interest due on the portion of the underpayment attributable to fraud.↩