T.C. Memo. 2001-77

UNITED STATES TAX COURT

LESELY J. AND ALJOURNIA MOORE, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 12656-98.                    Filed March 30, 2001.

Lesely J. and Aljournia Moore, pro sese.

<u>Jeanne Gramling</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

THORNTON, <u>Judge</u>:  By notice of deficiency dated April 8,
1998 (the notice), respondent determined Federal income tax
deficiencies, additions to tax, and penalties for petitioners as
follows:

| Year | Deficiency | Additions to Tax | | | Civil Fraud Penalty |
| | | Sec. 6653(b)(1)(A) | Sec. 6653(b)(1)(B) | Sec. 6653(b)(1) | Sec. 6663 |
| --- | --- | --- | --- | --- | --- |
| 1987 | $15,678 | $12,451 | [1] | --- | --- |
| 1988 | 10,153 | --- | --- | $7,615 | --- |
| 1989 | 4,478 | --- | --- | --- | $3,359 |
| 1990 | 11,297 | --- | --- | --- | 8,473 |

[1] 50 percent of the interest due on $15,678 for taxable year 1987.

After concessions, the primary issues for determination are: (1) Whether petitioners have unreported income for taxable years 1987, 1988, 1989, and 1990 as determined by respondent; (2) whether petitioners are liable for self-employment tax on unreported income for taxable years 1987, 1988, 1989, and 1990; (3) whether petitioners are liable for additions to tax or penalties for civil fraud for each of the taxable years 1987, 1988, 1989, and 1990; and (4) whether respondent is time barred from assessing tax liability against petitioners for any of the subject years.[1]

Unless otherwise noted, section references are to the Internal Revenue Code as in effect for the relevant taxable years. Rule references are to the Tax Court Rules of Practice and Procedure.

---

[1] Respondent's determinations with respect to the recapture of petitioners' 1987 claimed earned income credit and with respect to the reduction of petitioners' 1989 and 1990 claimed child care credits are automatic adjustments that will be resolved by our decision of the primary issues.

FINDINGS OF FACT

The parties have stipulated some of the facts, which we incorporate herein by this reference.

Petitioners

When they filed their petition, petitioners were married and resided in New Bern, North Carolina.  Petitioners filed joint Federal income tax returns for all of the subject years.

Petitioners' Businesses

During the years at issue, petitioners operated two businesses:  A grocery store known as Shop E-Z Mart and an automobile dealership known as Moore's Auto Sales (Moore's Auto). Petitioner Aljournia Moore (Aljournia) primarily operated Shop E-Z Mart, and petitioner Lesely Moore (Lesely) primarily operated Moore's Auto.

Petitioners maintained a bank account for Shop E-Z Mart (Shop E-Z Mart account) and a bank account for Moore's Auto (Moore's Auto account) at Wachovia Bank.  During the subject years, petitioners deposited into the respective accounts maintained for those businesses all income that they received from Shop E-Z Mart and Moore's Auto.  The deposits into those accounts were as follows:

| Year | Moore's Auto Account | Shop E-Z Mart Account |
|------|---------------------|----------------------|
| 1987 | $54,737 | $45,865 |
| 1988 | 41,517 | 68,585 |
| 1989 | 50,217 | 61,923 |
| 1990 | 47,181 | 70,066 |

During taxable years 1987 and 1988, petitioners maintained a savings account at Branch Banking and Trust Company (BB&T account). Petitioners' deposits into the BB&T account for the years 1987 and 1988 were $8,500 and $6,105, respectively.

Lesely's Disability Compensation

Lesely received disability compensation payments from the Federal Government for an injury he suffered during previous employment. During the subject years, Lesely received disability compensation payments as follows:

| Year | Total Payments Received |
|------|------------------------|
| 1987 | $13,482 |
| 1988 | 12,930 |
| 1989 | 15,342 |
| 1990 | 16,075 |

Each of these disability compensation payments was deposited into petitioners' bank accounts.

Petitioners' Cash Expenditures

Petitioners made numerous cash expenditures during the subject years. Those expenditures were for, among other things, mortgage payments on their residence, two parcels of real property, a mobile home, payments on a new 1987 Mercedes 560SEL sedan (purchased in 1988), payments on a new 1987 Lincoln Town

Car (purchased in 1986 with a $10,026 cash downpayment), payments on a new 1989 Chevrolet Suburban (purchased in 1990 with a $3,500 cash downpayment), payments on an American Express credit card and on a bank line of credit, home furnishings, and various other personal items.

Petitioners' cash expenditures during the subject years included the following aggregate amounts:

| Year | Real Property | Automobiles | Credit Card and Line of Credit Payments |
|------|------|------|------|
| 1987 | $3,547 | $4,274 | $3,716 |
| 1988 | 4,037 | 5,478 | 5,003 |
| 1989 | 3,537 | 11,823 | 5,609 |
| 1990 | 13,080 | 19,151 | 10,696 |

Petitioners' Criminal Activities

Lesely was involved in a type of illegal numbers operation sometimes referred to as a "ham-and-eggs lottery." In such an operation, an individual creates and sells lottery tickets, promising to pay off the purchaser at the odds played if the number on the ticket matches the winning number in a predesignated official (legal) State lottery. In his testimony, Lesely summarized the operation as follows: "People play the number every day and get the number every night. If they hit, they get paid."

Lesely participated in illegal numbers operations beginning about 1985. Primarily, he worked for himself in this activity,

although he also worked as a "bagman" carrying lottery slips from one location to another.  In 1986, and again in 1991 and 1994, Lesely was arrested while working as a bagman.  Each arrest resulted in a conviction for possessing illegal lottery slips.

In 1994, the State of North Carolina Department of Crime Control and Public Safety, Division of Alcohol Law Enforcement, commenced an investigation into Lesely's illegal numbers operation.  That investigation culminated with the March 31, 1994, search of the Moore's Auto premises as well as petitioners' residence.  The search of Moore's Auto resulted in the seizure of, among other things, lottery ticket receipt books, lottery tickets, an address book containing lottery writers' numbers, numerous pieces of lottery information, bank bags containing over $7,012 in cash, and a double-barrel shotgun.  The search of petitioners' residence resulted in the seizure of, among other things, lottery ticket receipt books, lottery tickets, numerous pieces of lottery information, and approximately $7,452 in currency.

Petitioners were charged pursuant to section 7201 with four counts of tax evasion (one count for each of the taxable years 1987, 1988, 1989, and 1990) and pursuant to 18 U.S.C. section 1955 with one count of gambling.  Lesely was also charged pursuant to 18 U.S.C. section 1920 with four counts of making false statements in applying for Federal employment compensation

benefits.  Aljournia ultimately pleaded guilty to one count of tax evasion pursuant to section 7201 with respect to taxable year 1990.  Lesely pleaded guilty to one count of tax evasion pursuant to section 7201 with respect to taxable year 1990, to one count of gambling from years 1987 through 1994 pursuant to 18 U.S.C. section 1955, and to one count of making false statements pursuant to 18 U.S.C. section 1920.

Petitioners' Federal Income Tax Returns

Petitioners employed Ms. Naomi Jenkins (Jenkins), a tax return preparer who owns an H&R Block franchise in Bayboro, North Carolina, to prepare their 1987, 1988, 1989, and 1990 Federal income tax returns.  For preparation of their 1987 and 1988 Federal income tax returns, Aljournia presented Jenkins with several boxes of disorganized documents.  Jenkins refused to prepare the returns from the documents presented.  Instead, Jenkins prepared petitioners' 1987 and 1988 returns using oral information that petitioners gave her.

For preparation of their 1989 and 1990 Federal income tax returns, petitioners presented Jenkins with bank statements, checks, and a paper bag filled with invoices.  Jenkins determined petitioners' income by reviewing the bank statements, and she determined petitioners' expenses by reviewing the checks and invoices.

Jenkins discussed with petitioners each tax return she prepared for them. When Jenkins asked petitioners whether all of their income was accounted for, petitioners answered affirmatively. Petitioners did not tell Jenkins about any income they received from illegal gambling activities.

On their 1987, 1988, 1989, and 1990 Federal income tax returns, petitioners reported total income (or loss) in the following amounts:

| Year | Total Income (Loss) Reported |
|------|------------------------------|
| 1987 | $8,403 |
| 1988 | (5,692) |
| 1989 | 19,422 |
| 1990 | 20,975 |

Petitioners filed their 1987, 1988, 1989, and 1990 Federal income tax returns on November 17, 1989; October 10, 1989; April 19, 1991; and April 15, 1991, respectively.

Respondent's Income Reconstruction

The Internal Revenue Service audited petitioners' 1987, 1988, 1989, and 1990 Federal income tax returns. During that audit, respondent's revenue agent concluded that petitioners' records were inadequate. Consequently, the revenue agent performed a bank deposits plus cash expenditures analysis to reconstruct petitioners' income.

The revenue agent's analysis, which is reproduced as the appendix to this opinion, reflects these four steps: First, the

revenue agent totaled all deposits from known bank accounts. Second, to arrive at gross income, the revenue agent totaled all of petitioners' known cash expenditures and added that number to the total known bank deposits. Third, the revenue agent subtracted from the total bank deposits and cash expenditures the amount of income that petitioners reported on their Federal income tax returns. Fourth and finally, the revenue agent reconciled the totals so derived to adjust for nonincome items, such as Lesely's disability compensation.

Based on this analysis, respondent determined in the notice that petitioners received unreported taxable income during the subject years in the following amounts:

| Year | Unreported Taxable Income |
|------|---------------------------|
| 1987 | $52,034 |
| 1988 | 49,083 |
| 1989 | 15,744 |
| 1990 | 37,320 |

OPINION

1. Unreported Income

Taxpayers are required to maintain records sufficient to show whether they are liable for Federal income taxes. See sec. 6001. If a taxpayer fails to keep records, the Commissioner may reconstruct the taxpayer's income. See sec. 446(b); Holland v. United States, 348 U.S. 121, 130-132 (1954); Parks v. Commissioner, 94 T.C. 654, 658 (1990). Petitioners made

numerous bank deposits and cash expenditures from unexplained sources. The bank deposits plus cash expenditures method is a recognized method of recomputing income. See <u>Parks v. Commissioner</u>, <u>supra</u>; <u>Nicholas v. Commissioner</u>, 70 T.C. 1057, 1065 (1978). Petitioners bear the burden of showing that respondent's determinations based on his application of the bank deposits plus cash expenditures method of reconstructing income are erroneous.[2] See Rule 142(a); <u>Parks v. Commissioner</u>, <u>supra</u> at 658; <u>Nicholas v. Commissioner</u>, <u>supra</u> at 1064.

Petitioners have alleged, and we have discovered, no infirmity in respondent's reconstruction of their income using the bank deposits plus cash expenditures method. Petitioners produced no credible evidence of any nontaxable sources for the unexplained funds deposited into their banking accounts or the

---

[2] The Internal Revenue Service Restructuring & Reform Act of 1998 (RRA 1998), Pub. L. 105-206, sec. 3001, 112 Stat. 685, 726, added sec. 7491, which shifts the burden of proof to the Commissioner in certain circumstances. Sec. 7491 is applicable to court proceedings arising in connection with examinations commencing after July 22, 1998. See RRA 1998 sec. 3001(c). Because respondent's examination of petitioners commenced before July 23, 1998, sec. 7491 is inapplicable here.

cash used to make payments in any of the subject years.[3] Accordingly, petitioners have failed to show error in respondent's reconstruction of their taxable income.

As best we can discern, petitioners' primary defense seems to be that they believed that their guilty pleas to tax evasion with respect to taxable year 1990 would relieve them of civil tax liability for all the subject years. Petitioners' misapprehensions in this regard afford no basis for relief. In any event, the judgments in Lesely's and Aljournia's respective criminal cases explicitly state that full restitution was not ordered in the criminal proceedings because restitution "will be handled under civil means".

Accordingly, we sustain respondent's determinations as to petitioners' unreported taxable income.

2. Self-Employment Tax

Section 1401 provides that a tax shall be imposed on the self-employment income of every individual. Petitioners have the burden of proving that they are not liable for self-employment taxes. See Rule 142(a). Petitioners failed to offer

---

[3] Aljournia Moore testified that during the search of petitioners' residence in 1994, North Carolina law enforcement officers seized, among other things, a "bag of buffalo nickels" given to her by her grandmother. It does not appear, however, that this currency, or other amounts of currency seized from petitioners' residence or from Moore's Auto in 1994, were included in respondent's bank deposits plus cash expenditures analysis for the years at issue.

any evidence or make any arguments that they are not liable for self-employment taxes. Consequently, we hold that petitioners are liable for self-employment taxes as determined by respondent.

3. Fraud

Respondent must show by clear and convincing evidence that a part of each year's deficiency is due to fraud. See sec. 6653(b)(1)(for taxable years 1987 and 1988); sec. 6663(a) (for taxable years 1989 and 1990). Fraud is not imputed from one spouse to the other. In the case of a joint return, respondent must prove fraud as to each spouse charged with liability for the addition to tax or penalty for civil fraud. See sec. 6653(b)(3) (for taxable years 1987 and 1988); sec. 6663(c) (for taxable years 1989 and 1990).

With respect to taxable year 1990, pursuant to guilty pleas, Lesely and Aljournia were convicted for criminal tax evasion under section 7201. Consequently, petitioners are collaterally estopped from challenging that there was an underpayment of their income tax due to civil fraud under section 6663 for taxable year 1990. See Gray v. Commissioner, 708 F.2d 243, 246 (6th Cir. 1983), affg. T.C. Memo. 1981-1; Moore v. United States, 360 F.2d 353, 355-356 (4th Cir. 1965); Arctic Ice Cream Co. v. Commissioner, 43 T.C. 68, 75-76 (1964);

Amos v. Commissioner, 43 T.C. 50, 56 (1964), affd. 360 F.2d 358 (4th Cir. 1965).

For taxable years 1987, 1988, and 1989, to satisfy his burden of proof as to fraud, respondent must establish both that (1) an underpayment exists for each year, and (2) that some part of the underpayment is due to fraud. See DiLeo v. Commissioner, 96 T.C. 858, 873 (1991), affd. 959 F.2d 16 (2d Cir. 1992).

To prove an underpayment, the Commissioner need not prove the precise amount of the deficiency he has determined, but only that some portion of the underpayment of tax for each year is due to fraud. See Niedringhaus v. Commissioner, 99 T.C. 202, 210 (1992). The Commissioner cannot rely simply on the taxpayer's failure to prove error in his determination of the deficiency. See Parks v. Commissioner, supra at 660-661; Petzoldt v. Commissioner, 92 T.C. 661, 700 (1989).

Respondent has documented petitioners' bank deposits and cash expenditures and has established a likely source of unreported income; i.e., gambling and illegal numbers operations. See Holland v. United States, 348 U.S. at 138. On the basis of all the evidence, we conclude that respondent has shown by clear and convincing evidence that petitioners underpaid their income taxes for each of the taxable years in issue. See DiLeo v. Commissioner, supra at 873-874.

Fraud is intentional wrongdoing designed to evade tax

believed to be owing.  See Gajewski v. Commissioner, 67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978).  Because fraudulent intent can seldom be established by direct proof of the taxpayer's intention, fraud may be proved by circumstantial evidence.  See Clayton v. Commissioner, 102 T.C. 632, 647 (1994);  DiLeo v. Commissioner, supra at 874.  While no single factor is necessarily sufficient to establish fraud, the existence of several indicia or "badges" of fraud is persuasive circumstantial evidence of fraud.  See Petzoldt v. Commissioner, supra at 700.  Badges of fraud include, but are not limited to:  (a) A substantial and consistent understatement of income; (b) dealing in cash; (c) participation in an illegal activity which is the likely source of income; (d) failure to maintain adequate records; and (e) failure to furnish the return preparer with accurate information.  See Clayton v. Commissioner, supra at 647; Petzoldt v. Commissioner, supra at 700; Bacon v. Commissioner, T.C. Memo. 2000-257.

a.    Substantial and Consistent Understatement of Income

Petitioners substantially and consistently understated their income for each of the years at issue.  From 1987 to 1990, petitioners failed to report approximately $150,000 of income.

b.  <u>Dealing in Cash</u>

Throughout the 4 years at issue, petitioners made numerous and substantial cash expenditures for, among other things, real property, new luxury automobiles, payments on credit cards, mortgages, and a host of other personal items.  Petitioners kept large amounts of cash in both their residence and at Moore's Auto.  Petitioners' extensive use of cash supports a reasonable inference that petitioners were knowingly and willfully attempting to conceal taxable income.  See <u>Clayton v. Commissioner</u>, <u>supra</u> at 647.

c.  <u>Participation in Illegal Activity</u>

Lesely pleaded guilty to one count of engaging in illegal gambling from 1987 through June 1994 under 18 U.S.C. section 1955.  While Aljournia might not have participated in illegal numbers operations, the evidence indicates that she knew or should have known of Lesely's involvement.  During the 1994 raid, North Carolina law enforcement officers found both lottery tickets and large amounts of currency in petitioners' residence.[4]  Moreover, Aljournia should have known that the cash

_____

[4] In her testimony, Aljournia offered inconsistent and implausible explanations, conceding at one point that lottery tickets were found in her residence but contending they were planted there by the law enforcement officials, and at another point contending, contrary to the evidence, that only one lottery ticket was found.  With regard to the $7,452 in currency found in her residence, Aljournia argued that "I should be able to have a few pennies around my house", contending unconvincingly that the
(continued...)

expenditures that petitioners made during the subject years for, among other things, a new Mercedes, a new Lincoln Town Car, and a new Chevrolet Suburban, were inconsistent with the income and losses reported on their joint Federal income tax returns.

Furthermore, both Lesely and Aljournia pleaded guilty to one count of income tax evasion pursuant to section 7201 for taxable year 1990. A taxpayer's criminal conviction, pursuant to section 7201, for tax evasion in the years immediately subsequent to the year in issue is a badge of fraud. See Tipton v. Commissioner, T.C. Memo. 1994-624.

d.  Failure To Maintain Adequate Records

During the years in issue, petitioners made numerous deposits into accounts and various transfers between and among accounts. Petitioners failed, however, to maintain adequate records as to income and expenses, including any records reflecting the income earned by Lesely from illegal gambling or numbers operations.

e.  Failure To Furnish Their Tax Return Preparer With Accurate Information

By failing to inform Jenkins of the income received from Lesely's participation in illegal numbers operations,

---

[4](...continued)
money represented coins collected by her children, a bag of buffalo nickels that she had received from her grandmother, and coins from her store.

petitioners failed to give Jenkins accurate information for the preparation of their Federal income tax returns.

On the basis of all the evidence, we conclude and hold that respondent has met his burden of proving that some portion of petitioners' underpayment for each year in issue is attributable to fraud on the part of both Lesely and Aljournia.

4.   Statute of Limitations

At trial, petitioners argued that the period of limitations has run for the years at issue.  Petitioners' argument is without merit.

Generally the amount of any tax must be assessed within 3 years after a return is filed.  See sec. 6501(a).  If the Commissioner proves that the taxpayer's return was false or fraudulent with the intent to evade tax, however, tax may be assessed "at any time".  Sec. 6501(c)(1).  We have held that respondent proved by clear and convincing evidence that petitioners' Federal income tax returns for taxable years 1987 through 1990 were filed with the fraudulent intent to evade taxes.  Accordingly, respondent is not time barred from assessing tax liability against petitioners for any of the subject years.

To reflect the foregoing and respondent's concessions,

Decision will be entered

under Rule 155.

Appendix

| | 1987 | 1988 | 1989 | 1990 |
|---|---|---|---|---|
| **BANK DEPOSITS:** | | | | |
| SHOP E-Z MART | $45,865.41 | $68,584.84 | $61,922.90 | $70,066.38 |
| MOORE'S AUTO SALES | 54,736.96 | 41,516.61 | 50,216.62 | 47,181.46 |
| BB&T SAVINGS | 8,500.00 | 6,104.59 | | |
| **PLUS CASH EXPENDITURES:** | | | | |
| AMERICAN EXPRESS | 1,638.42 | 3,527.00 | 4,988.53 | 9,302.74 |
| REAL ESTATE PURCHASED | | | | 9,408.77 |
| HOUSE PAYMENT | 2,076.00 | 2,076.00 | 1,903.00 | 2,200.00 |
| MERCEDES | | 1,269.24 | 7,615.44 | 7,615.44 |
| WACHOVIA (350.65 MO) | 4,273.69 | 4,207.80 | 4,207.80 | 4,361.58 |
| WACHOVIA (408.19) | | | | 4,081.90 |
| BANKLINE | 116.00 | | 400.00 | |
| WACHOVIA (163.44 MO) | 2,131.26 | 1,961.28 | 1,634.40 | 1,470.96 |
| SUBURBAN - DOWNPAY | | | | 3,500.00 |
| **LESS:** | | | | |
| DISABILITY CHECKS | (13,481.54) | (12,930.08) | (15,342.36) | (16,075.32) |
| INCOME PER RETURN | (52,000.00) | (53,000.00) | (93,649.00) | (91,681.00) |
| 1099 - CHARLES TOWN | | (1,173.00) | | |
| CHECKS TO CASH | (3,900.00) | (1,064.00) | | (7,000.00) |
| SETTLEMENT-ACCIDENT | | (4,104.58) | | |
| Additional purchases | | (12,486.00) | (7,360.00) | (6,349.00) |
| Additional personal withdraws | | 3,417.00 | 4,646.00 | 3,622.00 |
| Payment by check, not cash | | | | (408.00) |
| Line of Credit Advance | | | | (2,275.00) |
| Line of Credit Payments | 2,078.00 | 1,476.00 | 620.00 | 1,393.00 |
| Expense-gambling books | | | | (3,096.00) |
| Federal tax refund received | | | (2,615.14) | |
| Additional checks cash | | (300.00) | (749.00) | |
| Additional transfers | | | (2,695.00) | |
| Additional Income (Rounded) | 52,034.00 | 49,083.00 | 15,744.00 | 37,320.00 |